UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT M. McCREADY,                          Case No. 10-13893

            Plaintiff,               Lawrence P. Zatkoff
vs.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 12)**

**I.    PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On September 30, 2010, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Lawrence P. Zatkoff referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of Supplemental Security Income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 11, 12).

    B.    Administrative Proceedings

Plaintiff filed the instant claims on September 8, 2008, alleging that he

became unable to work on January 1, 2001. (Dkt. 7-5, Pg ID108). The claim was initially disapproved by the Commissioner on January 6, 2009. (Dkt. 7-4, Pg ID 80). Plaintiff requested a hearing and on January 12, 2010, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Peter N. Dowd, who considered the case *de novo*. Plaintiff amended his alleged onset of disability date at the hearing to September 8, 2008. (Dkt. 7-2, Pg ID 27). In a decision dated February 1, 2010, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 24-37). Plaintiff requested a review of this decision on March 26, 2010. (Dkt. 7-2, Pg ID 22). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC- 15E, Dkt. 7-2, Pg ID 20), the Appeals Council, on September 7, 2010, denied plaintiff's request for review. (Dkt. 7-2, Pg ID 17-20).

        For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 52 years of age at the time of the most recent administrative

hearing.  (Dkt. 7-2, Pg ID 47, 108).  Plaintiff's relevant work history included

approximately four months as a tile installer.  (Dkt. 7-6, Pg ID 118-119).  In

denying plaintiff's claims, defendant Commissioner considered lung problems as

possible bases of disability.  (Dkt. 7-6, Pg ID 118).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

September 8, 2008, the application date.  (Dkt. 7-2, Pg ID 29).  At step two, the

ALJ found that plaintiff's (1) chronic pulmonary disorder with emphysema; (2)

bursitis of the left shoulder; (3) obesity with sleep apnea; (4) history of poly-

substance abuse and hepatitis C; and (5) depression and antisocial personality

traits were "severe" within the meaning of the second sequential step.  *Id*.  At step

three, the ALJ found no evidence that plaintiff's combination of impairments met

or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 30).  At step

four, the ALJ found that plaintiff could not perform his previous work as a tile

installer.  (Dkt. 7-2, Pg ID 36).  At step five, the ALJ denied plaintiff benefits

because plaintiff could perform a significant number of jobs available in the national economy. *Id.*

    B.    <u>Plaintiff's Claims of Error</u>

       According to plaintiff, the ALJ failed to give any consideration or even reference his treating physician's opinion. According to plaintiff, his treating physician opined that due to severe dyspnea with mild exertion, plaintiff could not even walk a block. (Tr. 234). According to plaintiff, the consultative examiner also reported that plaintiff became short of breath after walking 1/2 block and would have to stop and rest for 10 minutes to catch his breath. (Tr. 192). Plaintiff asserts that the ALJ failed to impose any walking restriction and does not explain why this restriction by the treating physician was not given significant weight. Plaintiff also contends that the lifting requirements for light work, as found by the ALJ in the RFC, are contrary to his treating physician's opinion that even mild exertion would cause shortness of breath.

       Plaintiff asserts that his breathing problems are fully supported by the objective medical evidence, including a pulmonary function test dated September 16, 2008, which revealed a severe obstruction, indicative of a Listing level impairment. Plaintiff says the subsequent PFTs do not reveal, contrary to the ALJ's conclusions, any significant overall improvement in plaintiff's condition. Plaintiff points to the third PFT, which purported to show only mild to moderate

obstruction, was taken right after he used his inhaler in the waiting room.  Further, an October 2009 chest xray showed "prominent bilateral bronchial plugs in the posterior segment of the bilateral lower lobes with ground glass opacities which likely represent atelectasis, however, cannot exclude developing bilateral basilar pneumonia."

Plaintiff also complains that, in rejecting plaintiff's testimony that his episodes of shortness of breath require him to stop his activities and lie down, the ALJ incorrectly concluded that the examining physicians did not note a significant amount of wheezing or rhonchi.  Plaintiff says this finding is not supported by substantial evidence, given contrary findings on October 1, 2008, May 8, 2008, November 12, 2008, December 17, 2008, and September 10, 2009.  (Tr. 243, 171, 234, 194, 250). Further, when plaintiff was admitted to the ER on October 22, 2009, he had an oxygen saturation level of 88% and decreased breath sounds with scattered expiratory wheezing.  (Tr. 252).  He continued to have wheezing on discharge.  (Tr. 256).  Plaintiff argues that if his actual limitations were taken into account (he would be required to stop his activities on an unscheduled basis 3-4 times per day for approximately 15 minutes), the VE testified that all work would be precluded.

Report and Recommendation
Cross-Motions for Summary Judgment
*McCready v. Comm'r*; Case No. 10-13893

C.      Commissioner's Motion for Summary Judgment

The Commissioner urges the Court to reject plaintiff's argument that the ALJ erred in not addressing or giving significant weight to a November 2008 opinion from Dr. Brenda Coughlin that he could not walk one block and that he had severe dyspnea with mild exertion.  (Tr. 234).  According to the Commissioner, an examination of this notation on the treatment note, appears to merely be a record of plaintiff's subjective complaints, not the physician's opinions or findings.

Plaintiff appears to also argue that the ALJ erred in rejecting an opinion from Dr. Sankaran, a consulting physician.  According to the Commissioner, plaintiff's argument is again unavailing because, again, the notation he identifies represents his own subjective complaints.  The notation states that for the last six months, plaintiff had been short of breath when walking for one half block and must stop every ten minutes before he could continue.  (Tr. 192).  This statement occurs immediately after Plaintiff's report that he smoked two packs a day for over twenty years and before a statement that plaintiff coughed in the morning and evening.  (Tr. 192-93).  Thus, according to the Commissioner, plaintiff has failed to identify any medical source opinion that the ALJ should have considered and credited.

The ALJ noted that plaintiff alleged very significant limitations at the

Report and Recommendation
Cross-Motions for Summary Judgment
*McCready v. Comm'r*; Case No. 10-13893

hearing, including that he: had shortness of breath three or four times a day caused by activities including talking and tying his shoes; could lift no more than seven or eight pounds comfortably; could walk no more than a half-block; could not stand for more than fifteen minutes; and had serious difficulty with self-care and household chores. (Tr. 18, 43-46, 49-51). According to the Commissioner, the ALJ acknowledged that plaintiff experienced a degree of respiratory disease, complicated by other factors, but found that the evidence as a whole did not support his alleged limitations. (Tr. 18). In support of this finding, the ALJ noted that objective test results and treatment notes indicated that plaintiff improved with treatment. (Tr. 18). In addition, the ALJ found that there were discrepancies between the medical evidence and plaintiff's report to Agency and his testimony regarding his activities. (Tr. 19).

Specifically, the ALJ pointed to PFTs, which demonstrated that plaintiff's respiratory conditions improved with treatment over time. A September 2008 PFT revealed very severe obstruction. (Tr. 180). Although Dr. Paidipaty noted in October 2008 that a PFT showed results consistent with emphysema, Dr. Paidipaty stated that it revealed that plaintiff had only moderate obstructive airway disease, which improved significantly following administration of a bronchodilator. (Tr. 243). A PFT performed by Dr. Damuth in December 2008 resulted in the same conclusions as the October 2008 PFT. (Tr. 244). However, a PFT performed by

Dr. Sankaran later that month showed only mild to moderate obstructive airway disease. (Tr. 194). The results of the PFTs demonstrate that plaintiff's condition improved over time.

Plaintiff also contends that the ALJ erred in rejecting the results of the September 2008 PFT, which he claims met the criteria for Listing 3.02, found at 20 C.F.R. part 404, subpart P, App. 1, because the subsequent test results did not demonstrate improvement. As an initial matter, according to the Commissioner, plaintiff has failed to demonstrate that the September 2008 PFT was valid for determining whether his condition met Listing 3.02 due to a low FEV1 score (score representing one second forced expiratory volume). Listing 3.02A provides that a claimant will meet the listing if he has COPD and an FEV1 value equal or less than 1.65 if he is 72 inches tall, as plaintiff was in this case. (Tr. 180). The September 2008 PFT had an FEV1 score of 1.35. (Tr. 180). However, the test does not appear to have met the standards for a valid test under Listing 3.00E. That provision describes a number of requirements in order for a test to be valid for purposes of Listing 3.02A. It states that the FEV1 value must represent the largest of at least three satisfactory forced expiratory maneuvers. *Id.* There is no indication that three maneuvers were performed. Listing 3.02A also explains that a spirometry should be repeated after administration of a bronchodilator, if pre-bronchodilator results yield a value less than 70 percent of the predicted

normal FEV1 value.  PFTs performed to assess airflow obstruction without testing

following administration of a bronchodilator cannot be used to assess a claimant's

level of impairment, unless the use of such a drug is contraindicated.  *Id*.

Although the FEV1 value in the September 2008 test was 32 percent of the

predicted value, there is no indication that a bronchodilator was either

administered or inappropriate.  (Tr. 180).  Regardless, according to the

Commissioner, the ALJ reasonably concluded that while the September 2008 test

showed significant impairments, subsequent tests demonstrated improvement.  (Tr.

18).

Plaintiff argues that the subsequent tests did not show improvement because

Drs. Paidipaty and Damuth noted that a study showed "severely reduced diffusion

consistent with an element of anatomic emphysema."  However, the Commissioner

points out that the ALJ explicitly found that plaintiff's COPD was accompanied by

emphysema, and the fact that plaintiff had that condition does not detract from the

fact that his functioning improved from very severe obstruction in September 2008

to moderate obstructive airway disease by October 2008.  (Tr. 13, 180, 243).

Plaintiff also contends that the December 2008 study performed by Dr. Sankaran

did not show improvement because plaintiff used Albuterol prior to the test.  Dr.

Sankaran did, indeed, acknowledge that plaintiff last used a bronchodilator twenty

minutes prior to the test.  (Tr. 196).  However, measurements taken after

administration of a bronchodilator are expected by the Agency as part of a PFT.
20 C.F.R. part 404, subpart P, App. 1, Listing 3.00E.  Regardless, the
Commissioner asserts that plaintiff underwent two PFTs prior to the PFT
performed by Dr. Sankaran, both of which revealed improvement in functioning.
(Tr. 243-44).

Plaintiff argues that low room air oxygen levels in November 2008 and
January 2009 show that he had a "substantial severe pulmonary function
impairment."  According to the Commissioner, these measurements do not provide
significant information regarding plaintiff's condition, as neither treatment note
contains an interpretation of the raw oxygen level readings and neither treatment
note states that the results indicated "substantial severe pulmonary function
impairment" as claimed by plaintiff.   (Tr. 234, 237).  Regardless, the
Commissioner points out that the ALJ acknowledged that there was evidence of
recurrent low oxygen saturation with exertion, but noted that despite the readings,
plaintiff had never been prescribed home oxygen.  (Tr. 14).  Plaintiff also claims
that a chest CT scan in October 2009 shows that he did not experience
improvement because it revealed a number of abnormalities.  (Tr. 254).
According to the Commissioner, plaintiff's argument is unavailing because that
test was performed while plaintiff was in the hospital for acute exacerbation of
COPD secondary to pneumonia, and by the next day, he was discharged with mild

2:10-cv-13893-LPZ-MJH   Doc # 16   Filed 03/02/12   Pg 11 of 23   Pg ID 356

COPD exacerbation with bronchitis. (Tr. 256). There is no indication in the record that pneumonia was a chronic condition. Indeed, in December 2008, the Commissioner points out that plaintiff reported that he had never been hospitalized for a breathing problem. (Tr. 193). Thus, according to the Commissioner, substantial evidence supports the ALJ's finding that plaintiff's respiratory condition improved with treatment. (Tr. 18-19).

The Commissioner also contends that the ALJ reasonably found that treatment notes documented improvement in plaintiff's respiratory condition with treatment. (Tr. 18). The ALJ specifically identifies treatment notes dated February 2009 and September 2009. (Tr. 18, 238, 250). In February 2009, plaintiff reported to a staff member that he still had dyspnea and that his COPD was not controlled. (Tr. 238). However, on examination, plaintiff displayed clear breath sounds and there is no indication of wheezing or rhonchi. (Tr. 238). During plaintiff's last pulmonary consultation with Dr. Paidipaty in October 2009, plaintiff reported continuing symptoms, but stated that he felt better overall. (Tr. 250). On examination, plaintiff's respiration was normal except for a few rhonchi and rales. (Tr. 250). Dr. Paidipaty opined that "[f]rom a pulmonary point of view [plaintiff] is probably improved when compared to before." (Tr. 250). Other treatment notes after February 2009 also demonstrate improvement in plaintiff's condition. For example, plaintiff presented to Dr. Paidipaty in March 2009 with

11

Cross-Motions for Summary Judgment
*McCready v. Comm'r*; Case No. 10-13893

continuing complaints, however a chest examination was normal except for "a few rhonchi." (Tr. 249). Plaintiff presented to a staff member in June 2009 and reported doing well with no shortness of breath; a respiratory examination showed no abnormalities. (Tr. 241). Except for plaintiff's brief hospitalization for pneumonia in October 2009 (Tr. 256), the Commissioner maintains that the treatment notes document improvement in his respiratory condition.

Plaintiff argues that the ALJ erroneously stated on page eighteen of the administrative record that "examining physicians did not note a significant amount of wheezing or rhonchi." According to the Commissioner, the ALJ made no such finding. Rather, the ALJ acknowledged earlier in his decision that there was evidence of rhonchi in late 2008. (Tr. 14, 194, 234, 243).

The Commissioner next argues that, based on the discrepancies between the medical evidence and plaintiff's varying reports regarding his degree of functionality, the ALJ properly found his complaints not fully credible. (Tr. 19). The ALJ observed that although plaintiff's condition improved over time, he reported a decreasing ability to function to the Agency. (Tr. 19). The ALJ noted that in October 2008 (when is condition seemed at its worst), plaintiff reported that he went shopping for his mother, and left the house every day to walk or drive. (Tr. 123-25). However, at the hearing, plaintiff reported serious problems resulting from even tying his shoes. (Tr. 44). The ALJ also noted that when

plaintiff was hospitalized in October 2009, he stated that his symptoms occurred when he was starting a leaf blower, whereas he testified at the hearing that other people performed his yard work.  (Tr. 19).  According to the Commissioner, the ALJ reasonably found that discrepancies between plaintiff's reported limitations and the medical evidence diminished his credibility.  (Tr. 19).

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

Report and Recommendation
Cross-Motions for Summary Judgment
*McCready v. Comm'r*; Case No. 10-13893

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

     C.    <u>Analysis</u>

       The undersigned has examined the records that plaintiff claims are "medical

source opinions" that the ALJ failed to accommodate and agrees with the

Commissioner that they are merely the narrative description of plaintiff's

subjective complaints and symptoms and are not opinions regarding plaintiff's

limitations or restrictions.  (Tr. 192-193, 234).  In the November 12, 2008

treatment note, the "opinion" to which plaintiff refers is found in the section titled

"CC/HPI," which most likely is an abbreviation for "chief complaint" and "history

of present illness."  This makes sense, given that the "assessment/plan" section of

the treatment note is in an entirely different place, at the bottom of the page.  As to

the state agency physician report, the purported "opinion" plaintiff cites is plainly

contained within the section of the report where plaintiff describes his complaints

and history, as it recounts his depression, lung problems, his divorce, his

imprisonment, medications he has tried, his drug history and smoking history.

There is nothing in this section or the report suggesting that this consulting

physician offered an opinion that plaintiff was limited to walking half a block and

was required to stop for a 10 minute rest after doing so.  (Tr. 192-193).  Thus, in

the view of the undersigned, plaintiff has not pointed to any opinion evidence that

the ALJ failed to consider and certainly does not identify any limitations or

restrictions imposed by a treating physician that the ALJ failed to consider.

The remainder of plaintiff's arguments are essentially an attack on the

ALJ's credibility analysis.  Plaintiff claims that the medical evidence does not

show any improvement in his condition and that the ALJ erred in using the

medical evidence in this fashion to find that his complaints about his limitations

were not fully credible.  In the view of the undersigned, the ALJ's analysis of the

medical evidence showed an improvement in plaintiff's condition over the course

of 2008 and 2009.  The ALJ did not conclude that plaintiff did not have any

symptoms or restrictions, but the ALJ conducted a reasonable analysis of medical

evidence, which showed that plaintiff began in October, 2008 with a severe

pulmonary obstruction and in 2009 had improved to a mild to moderate pulmonary

obstruction.  The ALJ's RFC found that plaintiff could perform a highly restricted

range of light work:

> [T]he claimant has the maximal physical residual
> functional capacity (RFC) to perform light exertional
> work activities as defined in 20 CFR 416.967(b) except
> as restricted by the following: (a) the claimant is limited
> to only occasional climbing of stairs, balancing,
> stooping, kneeling, crouching and crawling; (b) the
> claimant should not engage in reaching over shoulder
> level with the left upper extremity; (c) the claimant
> should avoid concentrated exposure to extremes of cold,
> heat and humidity, and should avoid concentrated
exposure to fumes, odors, dusts and gases; (d) the claimant should avoid

concentrated exposure to workplace hazards; (e) the claimant is mentally limited to simple, routine and repetitive work activities performed in a stable work environment; and (f) the claimant can mentally tolerate superficial contacts with supervisors and coworkers, but should not work with the general public.

Plaintiff points to no treating or other medical source that places additional restrictions or limitations on his functionality. Moreover, the ALJ's determination that plaintiff's activity level was the highest when his illness was the worst and that his activities inversely decreased as his condition improved over time was also a reasonable basis for finding that plaintiff was not fully credible. The undersigned concludes that the ALJ's analysis of the medical evidence and plaintiff's credibility is supported by substantial evidence and the undersigned finds no basis to disturb the ALJ's findings.

     D.    <u>Conclusion</u>

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is supported by substantial evidence.

## IV.   **RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  March 2, 2012                              s/Michael Hluchaniuk
                                                  Michael Hluchaniuk
                                                  United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

        I certify that on March 2, 2012, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: <u>Matthew F. Taylor, Lynn Marie Dodge, AUSA, and
the Commissioner of Social Security.</u>

                                                  s/Darlene Chubb
                                                  Judicial Assistant
                                                  (810) 341-7850
                                                  darlene_chubb@mied.uscourts.gov